Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| BANCRÉDITO HOLDING CORP.<br><br>Querellante-Recurrente<br><br>v.<br><br>DRIVEN ADMINISTRATIVE SERVICES, LLC<br>(Síndico para Bancrédito International Bank & Trust)<br><br>Querellado-Recurrida<br><br>Oficina del Comisionado de Instituciones Financieras<br><br>Agencia Recurrida | KLRA202400565 | *REVISIÓN ADMINISTRATIVA* procedente de la Oficina del Comisionado de Instituciones Financieras<br><br><br>Querella Núm.:<br><br>Q23-D-034 |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Pérez Ocasio y el Juez Cruz Hiraldo.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de febrero de 2025.

La recurrente, Bancrédito Holding Corporation (en adelante BHC), solicita que revoquemos la Orden de Pago de Multa dictada por la Oficina del Comisionado de Instituciones Financieras.

La recurrida, Driven Administrative Service, LLC (en adelante Driven), presentó su oposición al recurso.

**I.**

El trayecto procesal de este caso comenzó cuando Bancrédito International Bank and Trust Corporation (BIBTC) inició un proceso de liquidación ante la Oficina del Comisionado de Instituciones Financieras (en adelante OCIF). No obstante, se le revocó la licencia como entidad bancaria internacional, debido a su incumplimiento con el plan de liquidación acordado. Driven fue nombrado Síndico

Número Identificador

SEN2025 _____

permanente. BHC presentó una solicitud urgente de intervención como único accionista del banco y fue autorizada. El banco, el Síndico y BHC suscribieron un acuerdo transaccional para finalizar las controversias y continuar con el proceso de liquidación. Las partes acordaron:

(1) Que Driven sería el Síndico permanente hasta la liquidación del banco.

(2) Los términos y condiciones para la transferencia de fondos de la liquidación.

(3) Que el Síndico tendría discreción absoluta para escoger la institución financiera o agencia en la cual se abriría una cuenta escrow y que recibiría los fondos a transferirse para la liquidación.

(4) Que el Escrow Agent debía ser una agencia o institución financiera reputada como Royal Bank y que la selección estaba sujeta a la determinación de no objeción de la OCIF.

Véase, Sentencia del TA, págs. 455-456 del apéndice.

El Síndico escogió a Apex Corporate Trustees Limited como Escrow Agent y a Lloyds Bank como la institución financiera donde se abriría la cuenta *escrow*. OCIF le notificó que no tenía objeciones. El 29 de marzo de 2023 envió un correo electrónico a las instituciones financieras involucradas y al BHC con instrucciones para la transferencia de fondos, conforme a lo establecido en el acuerdo. BHC se negó a completar las transferencias y objetó la selección del *escrow agent* y la apertura del *escrow account*. El 11 de abril de 2023 radicó una querella contra el Síndico por incumplir el acuerdo. El Síndico alegó que el acuerdo le confirió facultad absoluta para seleccionar el *escrow agent* y para la apertura de *escrow account*. Además, solicitó sanciones por temeridad contra BHC porque obstaculizó la transferencia de fondos y paralizó el proceso de liquidación. OCIF pidió la desestimación de la querella, porque tiene la facultad exclusiva de objetar la selección del *escrow agent*. El foro administrativo desestimó la querella por inmeritoria y

no pasó juicio sobre la reconvención y la solicitud de sentencia por las alegaciones del Síndico. Véase, págs. 457-458 del Apéndice.

Inconforme, BHC acudió al Tribunal de Apelaciones (TA). El 19 de diciembre de 2023, este foro resolvió que el *Settlement Agreement* no obliga a incluir a BHC en el proceso de selección del *escrow agent* o el *escrow account.* Por el contrario, concluyó que el acuerdo concedió discreción absoluta al Síndico de la liquidación para escoger el *escrow agent* y el *escrow account.* El tribunal resolvió que OCIF es quien únicamente puede objetar la selección. Según el TA, no existe obligación de incluir a BHC en ese proceso, porque se delegó claramente al Síndico la facultad de seleccionar el *escrow agent* y el *escrow account* y a OCIF la capacidad de objetar la selección. El TA confirmó la desestimación de la querella. El Tribunal Supremo de Puerto Rico denegó el recurso de certiorari que presentó BHC.

El 27 de marzo de 2024, el Síndico presentó una querella contra BHC porque se negó a proveerle acceso a los fondos en las cuentas existentes en STIF Fund Services Ltd. y en el Grupo Britannia en el Reino Unido y Las Bahamas, dentro de cinco (5) días a partir de las instrucciones. Según el Síndico, BHC asumió la obligación de cumplir con la transferencia de esos fondos como una condición *sine qua non* del acuerdo transaccional. Sin embargo, insistía en incumplir, a pesar de las determinaciones de los foros administrativos y judiciales. El Síndico adujo que BHC tardó más de seis (6) meses en proveerle acceso a 9.4 millones de dólares, depositados en Britania, Reino Unido, se negaba a transferir $7,091,582 depositados en Britania Las Bahamas y tardó casi nueve (9) meses en hacer las transferencias de los depósitos de STIF a la cuenta *escrow.* Véase, pág. 1 del apéndice.

El Síndico pidió al foro administrativo que: (1) determinara el incumplimiento de BHC con el acuerdo y le ordenara la

transferencia de los fondos en Britannia Bahamas a la cuenta *escrow* y (2) ordenara el pago de las multas acordadas en caso de incumplimiento, cuya cantidad se determinará a base de las tasas aplicables a los bonos del Tesoro de Estados Unidos, más un cinco por ciento (5%) por los montos que no fueron recibidos en la cuenta *escrow*. Según el Síndico, para el 5 de marzo de 2024, la multa era de $1,615,739.37 y continuaba en aumento. Igualmente reclamó el pago de las pérdidas, daños, deficiencias, reclamaciones, multas y de cualquier otra clase, sufridos e incurridos como consecuencia del incumplimiento de BHC. Finalmente solicitó sanciones por temeridad contra BHC. Véase, pág. 1 del apéndice.

La Oficina del Comisionado atendió la solicitud del Síndico como parte del caso que presentó BHC y determinó que las instrucciones sobre las transferencias cumplieron con el acuerdo. Su determinación está basada en el hecho de que el Tribunal de Apelaciones validó las actuaciones del Síndico. Según el foro recurrido, la cláusula tres (3) del acuerdo transaccional contiene de forma clara y sin margen a interpretación de todos los remedios solicitados por el Síndico, en caso de que se establezca el incumplimiento de BHC. El 25 abril de 2024 emitió una Orden para Mostrar Causa a BHC para que fundamente las razones por los cuales no debe conceder todos y cada uno de los remedios solicitados por el Síndico. Véase, pág. 47 del apéndice.

BHC pidió la desestimación de plano del reclamo del Síndico porque intentaba relitigar cuestiones y controversias resueltas. La recurrente alegó que se vio obligada a presentar una querella contra el Síndico porque se negó a proveerle información esencial para una transferencia de fondos millonarios. BHC reconoció que su querella fue desestimada, pero alegó que el foro administrativo decidió no pasar juicio sobre la reconvención y solicitud de sentencia por las alegaciones del Síndico. La recurrente invocó la doctrina de cosa

juzgada, porque el Síndico intentaba relitigar el mismo asunto que estuvo ante la consideración de la agencia. Según la recurrente, el Síndico decidió no objetar esa decisión. La recurrente adujo que no podía imputársele incumplimiento, respecto a las cuentas de Reino Unido y STIF porque realizó las transferencias y atribuyó al Síndico la dilación. BHC argumentó que la reclamación sobre esas cuentas era académica y que la controversia sobre las Islas Británicas no era madura, porque estaba pendiente de ser adjudicada por los tribunales de esa jurisdicción. *Contestación a Orden para Mostrar Causa*, pág. 55 del apéndice.

La recurrente adujo que los fundamentos esbozados por el Síndico eran falsos y contrarios a la realidad. BHC sostuvo que el Síndico no concretizó ni especificó en qué consistían los gastos reclamados. Según la recurrente, el Juez Administrativo concluyó que se trataba de los gastos de representación. No obstante, argumentó que es contradictorio que el único accionista del banco que recibirá las distribucionales finales de la liquidación pague los gastos y daños alegados por el Síndico. Por último, negó ser temeraria y alegó que siempre ha actuado en legítima defensa de sus derechos e intereses. Véase, pág. 55 del apéndice.

El 8 de agosto de 2024, la Oficina del Comisionado emitió una ORDEN DE PAGO DE MULTA contra BHC porque incumplió la cláusula 3 del acuerdo de liquidación. El foro recurrido se sorprendió, porque BHC trajo controversias que formaron parte de la querella original desestimada. Fue enfático en que la orden de mostrar causa no se emitió para pasar juicio sobre las facultades del Síndico y las obligaciones de BHC de cooperar y facilitar las transferencias, porque esos asuntos fueron evaluados. La Oficina del Comisionado advirtió que la orden se emitió porque la cláusula tres (3) del acuerdo establece claramente que BHC estaba obligado a cooperar y facilitar las transferencias dentro de los cinco (5) días

de recibir la notificación del Síndico y que su incumplimiento acarreaba las penalidades establecidas.

El foro administrativo dio por hecho que BHC no facilitó la transferencia de fondos dentro de los cinco (5) días, a partir de que el Síndico lo solicitó. Según consta en la resolución, esa fecha es el 29 de marzo de 2023. La Oficina del Comisionado hizo hincapié en que los fondos provenientes del Reino Unido fueron recibidos al cabo de cinco (5) meses, mientras que los fondos de Stif Fund se transfirieron casi nueve (9) meses después y a que la fecha de transferencia de los fondos en las Bahamas estaba en suspenso.

Al foro administrativo le quedó claro que la transferencia de los fondos de Reino Unido y Stif Fund, no convirtió en académico el reclamo de incumplimiento del Síndico. Dicho foro rechazó los argumentos de BHC, debido a que la penalidad se activó, porque no hizo las transferencias dentro de los cinco (5) días acordados. La Oficina del Comisionado advirtió que BHC admitió cándidamente que la transferencia del Reino Unido se realizó más de cinco (5) meses de solicitada y en el caso de STIF más de nueve (9) meses. El organismo administrativo eximió de responsabilidad al Síndico por el retraso de las transferencias, porque fue BHC la que presentó las acciones legales para cuestionar las facultades del Síndico. La Oficina del Comisionado determinó que no se estableció que la presentación de una causa de acción eximía a BHC de cumplir con el término de cinco (5) días o que sería paralizado hasta que la controversia fuera adjudicada.

La Oficina del Comisionado penalizó a BHC por su incumplimiento. No obstante, únicamente estableció la penalidad correspondiente a Britannia, Reino Unido y a STIF, porque las transferencias de esas cuentas fueron ejecutadas. Sin embargo, no adjudicó la penalidad correspondiente a Las Bahamas, porque esa transferencia no había sido realizada y existía un caso ante la

consideración de un tribunal de esa jurisdicción. Por otro lado, ordenó a BHC a pagar los gastos del caso conforme a lo pactado. Según el foro recurrido, BHC lejos de cumplir con el acuerdo de facilitar y cooperar con las transferencias, ha obstruido los procesos y no ha permitido que se realicen armoniosa y rápidamente. La Oficina del Comisionado pidió al Síndico un memorando de costas y una tabla con el desglose de las penalidades incurridas por BHC en los casos de Britania, Reino Unido y STIF. Véase, pág. 90 del apéndice.

El Síndico cumplió con lo ordenado y pidió reconsideración a la denegatoria de penalizar a BHC por el incumplimiento con la transferencia de los fondos depositados en Las Bahamas. Véase, pág. 93 del apéndice. El foro administrativo adjudicó responsabilidad a BHC, por no facilitar la transferencia de los fondos de Las Bahamas dentro de los cinco (5) días. Sin embargo, denegó la reconsideración, porque no podía determinar la cuantía de la penalidad, porque existía un proceso judicial pendiente en esa jurisdicción y la transferencia no había sido realizada. No obstante, hizo hincapié en que en el Reino Unido y en STIF la situación era distinta, porque las transferencias habían sido realizadas.

BHC también pidió reconsideración, debido a: (1) la falta de previsión expresa sobre el destino de las penalidades impuestas y las deficiencias en el cálculo de los daños líquidos, (2) que el foro administrativo debía deferencia a los procesos judiciales y (3) el memorando de costas era innecesario. La recurrente, en síntesis, alegó que: (1) el foro administrativo nunca resolvió su moción urgente de mostrar causa sobre la necesidad de continuar en sindicatura, (2) el retraso de las transferencias se debió a las instrucciones incompletas y confusas del Síndico que reconoció el juez administrador, (3) el banco renunció a cobrar los daños reales consistentes en los gastos administrativos ocasionados por la

dilación de transferencias, debido a que no presentó el memorando de costas, (4) no se han establecido los daños sufridos por el banco, sus acreedores o depositarios, (5) la tabla de liquidación provista por el Síndico no provee la fuente de donde estableció el Overnight Federal Funds Rate, utiliza un calendario de trescientos sesenta (360) días y no establece cómo se calcularon los daños líquidos, (6) es contradictorio que no se impusieran penalidades por las transferencias de Las Bahamas y si en los casos de Britannia, UK y Stif y (7) las costas y los gastos ya fueron pagados por el banco.

El foro recurrido denegó la moción de reconsideración de BHC. Según el foro recurrido, (1) el cálculo provisto por el Síndico no podía incluir la penalidad por la tardanza en la transferencia de la cuenta en Las Bahamas, porque todavía no había sido realizada, (2) el derecho de BHC de impugnar las acciones del Síndico no le exime de cumplir con las obligaciones establecidas en el acuerdo, (3) el acuerdo no dispone nada respecto a si el cálculo de intereses diarios debe basarse en trescientos sesenta (360) o en trescientos sesenta y cinco (365) días, (4) BHC no ha provisto un cálculo para compararlo con el realizado por el Síndico y determinar su corrección, (5) el Síndico fue frívolo, porque reclamó sanciones y luego renunció a solicitarlas, (6) iba a ordenarle al Síndico expresarse sobre las alegaciones de incumplimiento con el acuerdo y deber de fiducia.

La Oficina del Comisionado se reafirmó en que:

1. BHC incumplió con la obligación de causar y facilitar las transferencias dentro de los cinco días de recibir la notificación del Síndico, (2) el incumplimiento de BHC conlleva las penalidades establecidas en la cláusula 3 del acuerdo, (4) las penalidades a pagar se limitan a las transferencia de Reino Unido y STIF que fueron realizadas, (5) la cuantía correspondiente a las Bahamas está sujeta a la fecha en que se realice esa transferencia, (6) la penalidad por las transferencias de Reyno Unido y STIF es $940,962.23, y (7) la penalidad por costos y gastos no procede porque el Síndico la pidió.

Inconforme, BHC presentó este recurso en el que alega que:

ERRÓ LA OCIF AL DICTAR UNA ORDEN DE PAGO DE MULTAS SIN INDICAR EL DESTINO ESPECÍFICO DE LAS PENALIDADES IMPUESTAS AL QUERELLADO EN VIOLACIÓN NO SOLO DEL DEBIDO PROCESO DE LEY DE BHC SINO TAMBIÉN DEL FIN ÚLTIMO DEL PROCEDIMIENTO DE LIQUIDACIÓN VOLUNTARIA DEL BANCO (BIBTC).

ERRÓ LA OCIF AL DICTAR UNA ORDEN DE PAGO DE MULTA CON GRAVES ERRORES EN EL CÁLCULO DE LOS ALEGADOS DAÑOS LÍQUIDOS REALIZADO POR EL SÍNDICO DRIVEN.

ERRÓ LA OCIF AL DICTAR UNA ORDEN DE PAGO DE MULTA SIN OTORGAR LA MISMA DEFERENCIA A LOS PROCEDIMIENTOS ADMINISTRATIVOS Y JUDICIALES EN PUERTO RICO QUE A LOS PROCEDIMIENTOS JUDICIALES EN LA JURISDICCIÓN DE BAHAMAS.

**II.**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro del marco de las facultades que le fueron delegadas. A través de la revisión judicial, los tribunales pueden constatar que los organismos administrativos cumplan con los mandatos constitucionales que rigen su función y, en especial, con el debido proceso de ley. Su propósito es proveerle a la ciudadanía un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias. La revisión judicial constituye el recurso exclusivo para revisar los méritos de las decisiones administrativas adjudicativas o informales. *Voilí Voilá Corp., et al. v. Mun. de Guaynabo,* 2024 TSPR 29, 213 DPR ___ (2024).

Los tribunales sostendrán las determinaciones de hechos de una agencia si están basadas en la evidencia sustancial que obra en el expediente administrativo, considerado en su totalidad. La evidencia sustancial es aquella pertinente que una mente razonable puede aceptar como adecuada para sostener una conclusión. La parte que alega ausencia de evidencia sustancial no puede descansar en meras alegaciones, porque tiene que presentar prueba

suficiente para derrotar esa presunción. Dicha parte tiene que demostrar que en el expediente existe otra prueba que reduce o menoscaba el valor probatorio de la impugnada. El tribunal tiene que quedar convencido de que es imposible concluir que la determinación de la agencia fue razonable, conforme a la totalidad de la prueba ante su consideración. Cuando la impugnación de las determinaciones de hecho está basada en la prueba oral y en la credibilidad que le dio la agencia, es imprescindible traer a la consideración del foro revisor la transcripción de la vista celebrada a una exposición narrativa de la prueba. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 127-129 (2019).

La Sección 4.5 de la Ley 38-2017, 3 LPRA sec. 9675, autoriza expresamente a los tribunales a revisar en todos los aspectos las determinaciones de derecho de las agencias administrativas. Tan reciente como en *Voilí Voilá Corp., et al. v. Mun. de Guaynabo,* supra, el Tribunal Supremo de Puerto Rico ratificó la norma de conceder amplia deferencia a las determinaciones de las agencias administrativas, debido a su pericia. Según resolvió: (1) las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección, debido a su vasta experiencia y conocimiento especializado, (2) el criterio de la agencia solo puede sustituirse, cuando no existe una base racional para explicar su decisión y (3) la deferencia solo cede cuando: (a) la decisión no está basada en evidencia sustancial, (b) el organismo administrativo erró en la aplicación o interpretación de las leyes o reglamentos, (c) ha mediado una actuación arbitraria, irrazonable o ilegal o (d) la actuación administrativa lesiona derechos constitucionales fundamentales.

No obstante, el Tribunal Supremo de Estados Unidos revocó en *Loper Bright Enterprises v. Raimondo* resuelto el 28 de junio de 2024, la norma de deferencia judicial a la interpretación que hacen

las agencias administrativas de la ley que le corresponde poner en vigor. Dicha norma fue establecida en *Chevron USA v. Natural Res Def. Council,* 467 US 837 (1984). El tribunal adoptó en *Chevron* un análisis de dos pasos para revisar las conclusiones de derecho del foro administrativo. Si el Congreso manifiesta su intención de forma clara, el asunto queda finiquitado y no es necesario pasar al segundo paso. No obstante, el segundo paso, aplica cuando la ley guarda silencio o es ambigua. Si eso ocurre, el tribunal no puede imponer su interpretación, porque está obligado a dar deferencia a la interpretación que hizo la agencia, siempre que fuera permisible. La opinión en *Chevron* está basada en una presunción de que la intención del Congreso es que las agencias resuelvan las ambigüedades de las leyes que administran, debido a su conocimiento y experiencia en la materia.

El Tribunal Supremo resolvió en *Loper,* que la norma de deferencia establecida en *Chevron* sobre la interpretación de la ley, es irreconciliable con la Sección 706 de la APA.

El tribunal determinó que *Chevron* desafiaba el mandato de la APA al tribunal revisor decidir todas las cuestiones de derecho pertinentes e interpretar las disposiciones legales. Además, hizo hincapié en que el Artículo III de la Constitución Federal asigna al poder judicial la responsabilidad de decidir casos y controversias. Según el Tribunal Supremo de Estados Unidos, los redactores de la Constitución previeron que la interpretación final de las leyes compete al poder judicial. Aunque reconoce que los tribunales pueden tomar conocimiento de las opiniones del poder ejecutivo, advierte que no pueden reemplazar el juicio judicial. *Loper* nos deja claro que las agencias no tienen competencia especial para resolver ambigüedades estatutarias, porque esa facultad es del foro judicial. El tribunal advierte que incluso en *Chevron* se reconoció que el poder judicial es la autoridad final en cuestiones de interpretación

estatutaria. Por último, advierte que los redactores de la Constitución garantizaron que los jueces federales puedan ejercer su juicio libre de la influencia del poder político, pero reconoce que el Congreso puede otorgar autoridad a las agencias, sujeto a los límites constitucionales.

**B.**

Los tribunales tienen la norma de seguir sus decisiones previas en casos posteriores. Esta doctrina se conoce como la ley del caso. Su cumplimiento es esencial para garantizar la estabilidad y el respeto que merecen los dictámenes del tribunal. La costumbre es que las controversias adjudicadas por el foro primario o por un tribunal apelativo no pueden reexaminarse. Las determinaciones judiciales que constituyen la ley del caso incluyen todas aquellas cuestiones finales consideradas y decididas por el tribunal. La norma general es que estas determinaciones obligan al Tribunal de Primera Instancia como al que la dictó, cuando el caso vuelve ante su consideración. La doctrina de la ley del caso solo puede invocarse, si la controversia en sus méritos se adjudicó en una decisión final. No obstante, en situaciones excepcionales, si el caso vuelve ante el tribunal y este entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, se permite aplicar una norma de derecho distinta. *Pueblo v. Ríos Nieves,* 209 DPR 264, 278 (2022); *Pueblo v. Serrano Chang,* 201 DPR 643, 653 (2018).

**III.**

El primer y tercer señalamiento de error serán discutidos conjuntamente porque están íntimamente relacionados. La parte recurrente alega en su discusión del primer señalamiento de error que la dilación en las transferencias de fondos se debió a las instrucciones confusas del Síndico y que este tiene fondos suficientes para la liquidación. La recurrente argumenta que el foro administrativo no estableció los daños sufridos por el banco y sus

acreedores o depositarios, ni quienes se benefician con las penalidades. Aunque admitió que el banco sufrió gastos administrativos por la dilación, alegó que renunció a cobrarlos porque no presentó el memorando de costas ordenado.

El Síndico sostiene que la recurrente incumplió con el Art. 3 del acuerdo, porque no causó la transferencia de los fondos en el término pactado. Según el Síndico, el texto de ese artículo es claro y la recurrente suscribió el acuerdo libre y voluntariamente con el asesoramiento de sus abogados. No obstante, aduce que es un hecho incontrovertido que la recurrente no transfirió los fondos en el término acordado. Según el Síndico, (1) la existencia de fondos suficientes es irrelevante y (2) no hubo violación al debido de ley porque la recurrente fue notificada de la querella, tuvo la oportunidad de responder a la orden de mostrar causa, recibió la notificación de la orden de multa, pidió reconsideración y su solicitud fue atendida. Por último, arguye que no está obligado a demostrar daños reales, porque la cláusula tres (3) es de naturaleza penal y se suscribió para garantizar el cumplimiento de la obligación principal.

La recurrente sostiene en el tercer señalamiento de error que la decisión del foro administrativo es contradictoria, porque se negó a imponer una penalidad sobre la cuenta de Las Bahamas, por deferencia a los tribunales de ese foro. No obstante, alega que no dio la misma deferencia a las decisiones del foro administrativo y judicial relacionadas a las cuentas de Britania y Stif. Según la recurrente, en los casos de Britania y Stif tampoco procedía la penalidad, porque las transferencias se realizaron antes de que culminara el procedimiento judicial y el propio juez administrativo reconoció la existencia de dudas.

El Síndico argumenta que las alegadas deficiencias en las instrucciones no excusan el incumplimiento de la recurrente con el

término pactado para realizar las transferencias. El recurrido advierte que la querella de la recurrente se desestimó porque era inmeritoria, este tribunal confirmó la decisión y el Tribunal Supremo de Puerto Rico denegó la petición de certiorari. No obstante, arguye que la recurrente continúa levantando los mismos planteamientos.

Las controversias entre las partes se circunscriben a la interpretación y aplicación de la cláusula tercera del acuerdo de liquidación. Su texto es el siguiente:

> Liquidation. The Corporation cannot estimate the specific time period the Liquidation Period will take, however, the Liquidation Period shall not to exceed six (6) months from Effective Date.

Las partes acordaron en la cláusula citada que los fondos depositados en las cuentas en controversia eran indispensables para el cumplimiento del proceso de liquidación. La recurrente, (1) se obligó expresamente a que fueran transferidos a la cuenta de depósito en garantía del banco y (2) representó que el grupo de entidades con las que comparte la propiedad estaban al tanto del acuerdo y respetaban sus términos, incluyendo la transferencia de los fondos. El Síndico comenzaría a ejecutar las etapas a las que se hizo referencia en los párrafos 4 y 5, una vez la cuenta de depósito en garantía estuviera financiada con al menos todos los depósitos de Britania. La recurrente se comprometió a que todas las transferencias iban a ser realizadas y aceptó que esa era una condición *sine que non* del acuerdo. La falta de entrega de la totalidad de los fondos a la cuenta de depósito en garantía dentro de los cinco (5) días de la notificación del Síndico sería considerada como un incumplimiento de la recurrente.

La cláusula tercera del acuerdo obliga a la recurrente a indemnizar al banco por los daños y perjuicios ocasionados por su incumplimiento. La indemnización se calculará a base de los depósitos de un día, según la tasa del Tesoro de Estados Unidos.

Además, incluirá el cinco por ciento (5%) de los pasivos, deficiencias, reclamaciones, acciones, sanciones, multas, costos o gastos de cualquier tipo, incluyendo honorarios de abogado que conlleve el incumplimiento, sean consecuentes, incidentales o especiales.

El primer señalamiento de error no se cometió. La recurrente está obligada a cumplir con la penalidad establecida en el acuerdo, porque los fondos no fueron transferidos dentro de los cinco (5) días acordados. El Síndico solicitó la transferencia el 29 de marzo de 2023, mediante un correo electrónico enviado a la recurrente y a las instituciones financieras en las que están depositados los fondos. La recurrente admitió que las transferencias no se realizaron en el término acordado, porque optó por cuestionar en una querella administrativa la selección del *agent escrow* y solicitar la resolución del acuerdo. La Oficina del Comisionado de Instituciones Financieras desestimó la querella, porque la cláusula segunda del acuerdo concedió discreción absoluta al Síndico para seleccionar dónde abriría la cuenta *escrow* y escoger el *escrow agent*. Según la Oficina, quien único podía cuestionar la decisión era la OCIF, conforme al acuerdo y la avaló. El Tribunal de Apelaciones confirmó al foro administrativo. El Tribunal Supremo de Puerto Rico no acogió el recurso de certiorari de la recurrente.

La desestimación del reclamo de la recurrente se convirtió en final y firme. Sin embargo, la recurrente reproduce los mismos argumentos para justificar su incumplimiento y evadir el pago de la indemnización por daños y perjuicios. No obstante, alega de forma inverosímil que el Síndico pretende relitigar cuestiones y controversia que fueron planteadas y resueltas por OCIF. Sus argumentos no tienen fundamento alguno, porque obvia que fueron rechazados en una decisión que es final y firme.

BHC no está exonerada del cumplimiento de la obligación, porque el Síndico cuente con fondos suficientes. El acuerdo fue la

transferencia de todos los fondos dentro del término de cinco (5) días y que su incumplimiento conllevaría una indemnización por los daños y perjuicios ocasionados. La Oficina del Comisionado hizo hincapié en que la recurrente admitió cándidamente que la transferencia del Reino Unido se realizó más de cinco (5) meses de solicitada y en el caso de STIF más de nueve (9) meses después. Obviamente ambas transferencias se realizaron fuera del término pactado.

Tal como alega la recurrida tampoco hubo violación al debido proceso de ley. La recurrente fue notificada de la querella del Síndico, tuvo la oportunidad de responder a la orden de mostrar causa, fue notificada de la orden de multa, pidió reconsideración, su solicitud fue atendida y presentó este recurso. Las partes no acordaron que la suficiencia de fondos era razón para exonerar al recurrente del pago de la penalidad por incumplimiento. Los cuestionamientos relacionados a que no se menciona el nombre del beneficiario de la penalidad son irracionales, ya que es obvio que es el banco.

El Síndico tampoco estaba obligado a establecer daños porque no fue pactado. Las partes acordaron expresamente la forma de computar la penalidad por los daños ocasionados por la tardanza de las transferencias. Según lo pactado, el cómputo se realizará a base de los depósitos de un día conforme la tasa del Tesoro de Estados Unidos. El Síndico reclamó el pago de la penalidad a partir del 6 de abril de 2023, cuando venció el término de cinco (5) días para hacer las transferencias requeridas el 29 de marzo de 2023. La penalidad se computó en el caso de STIF desde el 22 de diciembre de 2023 y hasta el 12 de septiembre de 2023 porque fueron las fechas en las que se hicieron las transferencias de los fondos.

El tercer señalamiento de error tampoco se cometió. La apelante alega unas contradicciones que no existen. La distinción

que hizo el foro recurrido obedece a que las transferencias de las cuentas de Britania y Stif fueron realizadas. Por consiguiente, la indemnización puede ser determinada a partir del vencimiento del término de cinco (5) días para realizar la transferencia hasta la fecha en que fue realizada. La situación es distinta respecto a la cuenta de Las Bahamas, donde la fecha hasta la que debe computarse la indemnización es incierta porque la transferencia no se ha realizado.

La recurrente cuestiona en el segundo señalamiento de error la confiabilidad del cómputo de los daños líquidos que realizó el Síndico y que adoptó el foro recurrido en la orden de pago de multa.

Según la recurrente, el foro recurrido descansó exclusivamente en la tabla de daños del Síndico, de la que no surge la fuente que utilizó para establecer el Overnight Federal Funds Rate. A su juicio, la determinación del foro administrativo es contradictoria porque, estuvo de acuerdo con el cálculo de penalidades, pero exigió la exclusión de ciertas cuantías. Finalmente cuestiona que el Síndico utilizará un calendario de trescientos sesenta (360) días para hacer el cálculo.

El foro recurrido no cometió el segundo señalamiento de error. El Síndico tiene razón. La parte recurrente alega que la tabla del Síndico tiene errores de cálculo. Sus argumentos no tienen mérito, porque ni siquiera ha identificado cuáles son los errores que alega, ni ilustrado cuál entiende es la manera correcta de calcular la penalidad. El Síndico cumplió con el acuerdo porque calculó la penalidad a base del *overnight deposit* aplicable por el Tesoro de Estados Unidos, según lo pactado. La recurrente también alega que la penalidad debió computarse a base de un calendario de trescientos sesenta y cinco (365) días. No obstante, el Síndico procedió conforme a la industria bancaria que utiliza un calendario de trescientos sesenta (360) días y no de trescientos sesenta y cinco (365), como pretende la recurrente. Por último, la recurrente

cuestiona que el foro administrativo estuvo de acuerdo con el cálculo de penalidades, pero exigió la exclusión de ciertas cuantías. La recurrente se equivoca. El foro recurrido no ordenó enmendar los cálculos de la tabla por un error. Sus instrucciones fueron excluir la cuenta de Las Bahamas, porque todavía no puede ser determinada.

La parte recurrente no ha demostrado que en el expediente administrativo existe otra evidencia sustancial que derrota el valor probatorio de la que sostiene la decisión del foro administrativo. Este tribunal ha ejercido la autoridad que le corresponde como intérprete final de ley. Luego de revisar en todos los aspectos las determinaciones de derecho que hizo la Oficina del Comisionado, concluimos que su interpretación y aplicación de la ley fue correcta.

**IV.**

Por lo antes expuesto se confirma la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones